Plaintiff, Samson Banking Company, held certain funds, claims to which were made by defendant, Charles A. Boswell, as Commissioner of Revenue of the State of Alabama, under the Alabama Uniform Disposition of Unclaimed Property Act, Tit. 47, sections 314, et seq. Code of Alabama 1940 (Recomp. 1958) (Supp. 1973) (currently Code of Alabama 1975, sections35-12-20, et seq.). Plaintiff filed a complaint seeking declaratory, injunctive and other relief from defendant's claims. This cause was submitted to the Circuit Court of Geneva County upon the pleadings, stipulated facts, exhibits and oral testimony. The trial court, sitting without a jury, entered findings of fact and a decree in favor of plaintiff, holding that Samson Banking Company was entitled to deduct certain service charges from the deposits in question and that defendant was entitled only to such amounts remaining thereafter which were not returned to the depositor. Defendant appeals from this decree. We reverse.
The facts giving rise to this appeal are as follows. Plaintiff (hereinafter referred to as "the bank") is an Alabama banking corporation with its main office and place of business in Samson, Geneva County, Alabama. *Page 549 
The bank's general policy is to assess a three dollar per month service charge on "active" checking accounts, but no such charge is made when there have been no recorded transactions concerning that account within the past two or three months. Provision for the assessment of the service charge is found in the signature card signed by each depositor. Each of those cards provides in pertinent part:
 It is agreed that a service charge may be made by the bank each month for handling this account, and the amount thereof shall be charged against this account.
The bank is subject to the supervision of the Federal Deposit Insurance Corporation (FDIC). Because of the relative inactivity of some of the bank's checking accounts, examiners of the FDIC requested in 1958 that the account cards for these inactive accounts be segregated from those of the active accounts and placed in a so-called dormant category for control purposes.
These dormant accounts, listed in Exhibit A to the stipulation of facts, total approximately 248 in number. Prior to the deduction of the service charges by the bank, over one-half of these dormant accounts had a balance of less then ten dollars, and approximately fifteen of these accounts had a balance of more than one hundred dollars.
After the segregation of these inactive accounts the bank ceased sending monthly statements to the depositors whose accounts had been classified as dormant. No service charges were assessed against these dormant accounts.
On July 14, 1971 the bank assessed a "deferred accumulative" service charge on each of the dormant accounts. The aggregate amount of these charges was $4,172.60. In most instances the amount of the individual charge equalled the balance in the account. The effect of these assessments was to reduce to zero the balance in all but twenty-six of the dormant accounts. The balances remaining in those accounts which were not eliminated by the service charge were either returned to the depositor or paid to the State.
On September 19, 1972 the bank's board of directors adopted the following resolution:
 RESOLVED, That the Cashier of the Bank is hereby authorized and directed to take dormant accounts on the Bank's books into service charges; and
 RESOLVED FURTHER, That these accounts each be charged $3.00 per month for service charges until each such account is eliminated; and each and all of said accounts are hereby approved for charging off in the manner aforesaid.
The only testimony at trial was that of two of the bank's employees. The first witness, Mrs. Jonnie Faye Avant, worked at the bank from 1955 until 1977 as a "`jack of all trades' in helping keep the bank's books." She testified that the funds in the dormant accounts remained payable and demandable by the customer both before and after the segregation of those accounts; that during her employment with the bank no service charge had ever been assessed against dormant accounts until the July 1971 assessment; that the bank did not notify any of its customers that his or her account had been classified as dormant, nor had the bank been required to do so by the FDIC or anyone else; and, that if regular service charges had been assessed against the dormant accounts from 1958 on, the balances of practically all of those accounts would have been reduced to zero long before 1971, but that, pursuant to FDIC instructions, no service charges had been made.
The other witness was Mr. James H. Duke, the bank's executive vice-president. His testimony indicated that services charges on the dormant accounts had been "deferred" from 1958 until 1971. He stated that during this period the bank had received no further instructions from the FDIC regarding the dormant accounts and that the bank was "afraid to" assess service charges against those accounts during this period because every time the FDIC examiners inspected the bank, one of the first things they looked at was to see if there had been any changes in the balances of the *Page 550 
dormant accounts. His testimony further indicated that the funds in the dormant accounts were payable and demandable by the depositor up until the July 1971 assessment, after which time those amounts assessed as service charges were carried forward in the records as funds of the bank.
The Commissioner's claims to those funds assessed by the bank as service charges is based on the Alabama Uniform Disposition of Unclaimed Property Act (hereinafter referred to as "the Act"), the effective date of which is April 27, 1971. The Act provides in pertinent part:
 § 315. The following property held or owning by a banking or financial organization . . . is presumed abandoned:
 (a) Any demand, savings, or matured time deposit made in this state with a banking organization, together with any interest or dividend thereon, excluding any charges that may lawfully be withheld, unless the owner has, within seven years:
 (1) Increased or decreased the amount of the deposit . . . or
 (2) Corresponded in writing with the banking organization concerning the deposit; or
 (3) Otherwise indicated an interest in the deposit. . . .
. . . . .
 § 324. (a) Every person holding funds or other property, tangible or intangible, presumed abandoned under this chapter shall report to the commissioner of revenue with respect to the property as hereinafter provided.
. . . . .
 (d) The initial report required under this chapter shall be filed on or before August 1, 1971, as of May 1, 1971. [Emphasis supplied.]
The Commissioner argues on appeal that the trial count erred in holding that the bank was lawfully entitled to assess the service charges against the dormant accounts because the funds therein had already become reportable and deliverable to the State prior to the assessment by virtue of the Alabama Uniform Disposition of Unclaimed Property Act. The Commissioner further argues that the bank had waived, and should be equitably estopped from asserting, its right to impose such charges because the charges were not made until after the dormant accounts had been presumed abandoned under the Act.
The bank, as appellee, contends that the trial court's holding was correct and that several other grounds raised below but not specifically ruled on by the trial court would also support the conclusion reached below. Therefore the bank, without having perfected an appeal as provided for in Rule 4 (a)(2) ARAP, argues the following "as in the nature of a cross-appeal": one, that the Commissioner's waiver and estoppel arguments are without merit; two, that the Commissioner's claims to the funds are barred by the six year statute of limitations governing actions for recovery of personal property, Code of Alabama 1975, § 6-2-34, because all of the dormant accounts were in existence and the funds therein demandable more than six years prior to the Commissioner's claims, citing inter alia Boswell v. South Central BellTelephone Co., 293 Ala. 189, 301 So.2d 65 (1974); and three, that as applied to this case the Alabama Uniform Disposition of Unclaimed Property Act violates both the State and Federal Constitutions, because the Act causes confiscation of property without just compensation or due process and impairs the obligation of contract.
The Alabama Supreme Court said in Boswell v. South CentralBell Telephone Co. that in determining the meaning of an act, the paramount purpose is to ascertain the legislative intent; and if the language of a statute is unambiguous, that clearly expressed intent must be given effect, and there is no room for construction.
We think the Alabama Uniform Disposition of Unclaimed Property Act clearly requires the holder of property which has been presumed abandoned under the terms of that Act — in this case the bank — to include in its initial report all such property held by it as of May 1, 1971. It is *Page 551 
equally clear that as of May 1, 1971 those dormant accounts involved in this case were held by the bank, were presumed abandoned under the terms of the Act, and should have been reported as such to the Commissioner.
The fact that the Act provides a three month period during which the holder of abandoned property may assemble and deliver its report to the Commissioner does not alter the bank's duty to report its holdings of abandoned property as of May 1, 1971.
The above-quoted section 315 of the Act (currently Code of Alabama 1975, § 35-12-22) excludes from its definition of presumed abandoned bank deposits "any charges that may lawfully be withheld." The issue, then, is whether the charges imposed by the bank in July 1971 were "lawful." We agree with the Commissioner that the bank was not "lawfully" entitled to deduct such charges from the dormant accounts after May 1, 1971.
Section 326 of the Act (currently Code of Alabama 1975, §35-12-33) provides in pertinent part:
 Every person who has filed a report under section 324 . . . shall pay or deliver to the commissioner of revenue all abandoned property specified in the report. . . . [Emphasis supplied.]
We think this section means that all property specified in the report and all property that should have been specified in thereport is to be paid or delivered to the Commissioner. The Act requires the May 1, 1971 balances in the dormant accounts to be reported and thereafter delivered to the Commissioner.
We express no opinion as to the question of whether the bank was legally entitled to deduct service charges on these accounts prior to May 1, 1971. Assuming arguendo that the bank had such a right, the bank after May 1, 1971 was no longer entitled to impose such charges because the funds in those accounts had become reportable and deliverable to the Commissioner, notwithstanding the later resolution by the bank's board of directors. It follows that the trial court erred to reversal in holding that the bank was lawfully entitled to deduct the service charges in July 1971.
Our holding obviates the need to consider the waiver and estoppel arguments raised. A determination of these issues favorable to the bank would not alter the fact that under the circumstances of this case the Act requires the May 1, 1971 balances in the dormant accounts to be reported and delivered to the Commissioner.
We do not think that the issues raised by the bank concerning the statute of limitations and the constitutionality of the Act are properly before us. The bank argues these issues "as in the nature of a cross-appeal," without having filed a notice of appeal as provided for in ARAP 4 (a)(2).
The trial court held that the bank was entitled to deduct the service charges from the funds in the dormant accounts, and that any funds remaining after these deductions which were not returned to the depositor were deliverable to the Commissioner. Implicit in this holding are findings that the Commissioner's claims are not barred by any applicable statute of limitations, and that the Act is constitutional. In the absence of either of these implicit findings the Commissioner would not have been entitled to custody of any of the disputed funds.
The United States Supreme Court said in Dandridge v.Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, reh.den. 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970), that a prevailing party may assert in a reviewing court any ground in support of his judgment whether that ground was relied upon or even considered by the trial court. However, the bank's arguments do not merely support the trial court's holdings, but rather attack that portion of the judgment which allowed the Commissioner such custody as was granted therein.
Our case law says that an appellee may not cross assign error without taking an appeal. Mutual Savings Life Insurance Co. v.Montgomery, Ala., 347 So.2d 1327 (1977); Headley v. HousingAuthority of Prattville, Ala.Civ.App., 347 So.2d 532 (1977), and authorities *Page 552 
cited therein. Therefore, in the absence of a cross appeal by the bank, these assignments of error present nothing for review.
Because the trial court erred in holding that the bank was lawfully entitled to deduct the service charges, its judgment is reversed and the cause remanded for entry of judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.